IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARK G. GARVEY,<br>Plaintiff, | )<br>)<br>) |
| vs | ) Civil Action No. 19-220<br>) Magistrate Judge Dodge |
| PLUM BOROUGH SCHOOL DISTRICT,<br>Defendant. | )<br>) |

### MEMORANDUM OPINION

Plaintiff Mark G. Garvey brings this action pursuant to 42 U.S.C. § 1983 and state law against Defendant, Plum Borough School District ("the District"). Plaintiff alleges that he was denied due process with respect to accusations that were made against him, and that the District suspended and ultimately terminated his employment without providing him with notice and an opportunity to be heard.

The District has moved to dismiss Plaintiff's claims. For the reasons that follow, its motion will be granted in part and denied in part.

**I.  Relevant Factual Background[1]**

Plaintiff taught physical education in the District for 13 years. Justin Stephans, who became the principal at Plum Senior High School (the "High School") in January 2017, assigned Plaintiff to teach an all-female physical education class for the 2017-2018 school year. At the time, Officer Joe Little of the Plum Police Department was the High School's school resource officer. (Compl. ¶¶ 6-10.)[2]

On October 2, 2017, Plaintiff was suspended with pay by Principal Stephans "without

---

[1] All facts are taken from the Complaint and accepted as true for purposes of the motion to dismiss.
[2] ECF No. 1.

any explanation." Plaintiff was asked to meet with Officer Little at the Plum Borough Police Station. When he did so, Officer Little told him that Principal Stephans was reviewing video tapes of his classes to determine if he was ogling female students' breasts during "hops-in-place" exercises. Officer Little and a detective also questioned Plaintiff regarding how he contacted students outside of class. Plaintiff alleges that these concerns were wholly unfounded, that the videotapes showed that he distanced himself significantly from any close observation of the exercising girls during the "hops-in-place" exercises and that the investigation quickly ended with Principal Stephans and Officer Little concluding that he had done nothing wrong. His suspension with pay lasted two days. (Compl. ¶¶ 11-20, 114.)

On March 5, 2018, Assistant Principal Michael Gauntner asked Plaintiff to report to the High School office to meet with him. Principal Stephans and union representative Rick Berrott also attended the meeting. Plaintiff was told to leave the High School immediately and not return until Principal Stephans called him back to work. He was not given a reason for this suspension with pay. (Compl. ¶¶ 21-24.)

Several days later, Plaintiff was advised by union president Gray ("Gray") that he had been reported to Childline, an entity that receives reports of child abuse. Plaintiff alleges that the District reported him to Childline without advising him with the charges or giving him an opportunity to respond. (Compl. ¶¶ 21-27.)

Officer Little, acting at the request of the District, left a voicemail message for Plaintiff on March 8, 2019 in which he asked Plaintiff to call him so that he could make a statement. Plaintiff contends that the District asked Officer Little to treat the undisclosed charges against him as a criminal matter. On March 9, 2018, Plaintiff hired a criminal defense attorney to represent him and, on the advice of counsel, did not respond to the voicemail message. (Compl.

2

¶¶ 28-34.)

On March 12, 2018, Gray advised Plaintiff that Principal Stephans wanted him to come to the High School to answer some questions. Gray advised Plaintiff not to speak to Principal Stephans until the criminal charges against him were resolved and conveyed this message to Principal Stephans as well. As a result, no meeting occurred. (Compl. ¶¶ 35-40.) Instead, Principal Stephans supplied written questions for Plaintiff to answer, including asking him what had happened in the cafeteria between Plaintiff and a female student identified only as "AS." Plaintiff did not know who "AS" was or what incident was being referenced. Gray advised Plaintiff not to answer these questions without his criminal defense lawyer being present. (Compl. ¶¶ 41-44.)

On or about March 14, 2018, Plaintiff learned for the first time that the District may have been drafting what was being referred to as a "Loudermill" letter.[3] He understood this to mean that he might be suspended without pay even though he still did not know the specific charges against him and had not been provided with an opportunity to respond.

On March 24, 2018, Plaintiff received a criminal summons which arose out of Officer Little's investigation. The summons said nothing specific about the nature of the allegations but indicated that Plaintiff "w/the intent to harass + annoy, subjected the victim to unwanted physical contact." Gray and the union's attorney advised Plaintiff of his Fifth Amendment rights and recommended against contacting Officer Little. The summons directed Plaintiff to appear before a local magisterial district judge on May 10, 2018 to defend himself against the criminal charge. Plaintiff returned the summons and pled not guilty. (Compl. ¶¶ 46-54.)

Gray subsequently told Plaintiff that the District would be sending him a notice regarding

---

[3] *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985).

3

a Loudermill hearing. On April 6, 2018, Gray informed him that a Loudermill hearing was scheduled for April 13, 2018. While Gray forwarded the Loudermill letter to Plaintiff, (Compl. ¶¶ 53-59 & Ex A.) he did not receive notice of the hearing directly from the District. According to Plaintiff, the hearing did not take place because of the pending charges against him. (Compl. ¶¶ 60-65.)

Plaintiff was advised by Gray on April 17, 2018 that if he agreed to retire, the District would not proceed with a statement of charges or his termination. (Compl. ¶ 66.) On April 25, 2018, the attorney for the union advised Plaintiff's that the District was not willing to allow him to return to work even if he was found not guilty of the pending criminal charge and would move forward with dismissal if no agreement was reached regarding Plaintiff's retirement. (Compl. ¶ 69 & Ex. B at 1.) According to Plaintiff, this demonstrates that the District never intended to provide him with a meaningful opportunity to respond in a Loudermill setting. (*Id.*)

Plaintiff's situation was not discussed at either the District's April 24, 2018 or May 22, 2018 school board meetings. (Compl. ¶¶ 68, 72.)

Plaintiff attended a hearing on May 24, 2018 regarding his criminal charges during which several students testified. He was found not guilty by the district magistrate. (Compl. ¶¶ 71-77.) Plaintiff then asked Gray to seek his reinstatement. Gray informed him that the District intended to suspend and/or terminate him unless he chose to voluntarily retire. For the next several weeks, Plaintiff and his union representative attempted to negotiate a retirement plan that would salvage his reputation, but these negotiations were unsuccessful. (Compl. ¶¶ 78-86.)

On June 13, 2018, Plaintiff met with Gray and Assistant Principal Szarmach at the High School to clean out his office. At a School Board meeting on June 26, 2018, he was placed on unpaid leave without an opportunity to respond to the charges.

4

On June 27, 2018, the District issued an Official Statement of Charges against him, but Plaintiff did not receive it until July 11, 2018 because he was out of town. The Official Statement of Charges, which was identical to the violations outlined in the April 6, 2018 Loudermill letter, called for his termination and indicated that a hearing would be held on July 10, 2018. (Compl. ¶¶ 87-92 & Ex. C.)

On June 28, 2018, Gray notified the District that Plaintiff was appealing his pending termination to arbitration as part of the grievance process contained in the applicable collective bargaining agreement.[4] On July 24, 2018, the District terminated Plaintiff's employment without giving him an opportunity to respond to the charges against him. The termination was reported in the media, which Plaintiff claims to have resulted in irreparable damage to his reputation. (Compl. ¶¶ 94-100.)

Prior to any arrangements being made to conduct an arbitration regarding Plaintiff's grievance, his counsel contacted the District's solicitor on August 14, 2018 to request a hearing before the school board, thereby withdrawing the grievance demanding an arbitration hearing. His counsel told the District's solicitor that the school board suffered no prejudice by his act of opting for a board hearing rather than an arbitration and that Plaintiff did not fully understand that he had the option for a school board hearing when the union filed a grievance on his behalf. The District's solicitor denied Plaintiff's request for a hearing. (Compl. ¶¶ 101-13.)

Plaintiff alleges in Count I of the Complaint alleges that the District violated his right to procedural due process under the Fourteenth Amendment to the United States Constitution when it suspended him on multiple occasions and then terminated his employment. Count II alleges that the District violated Pennsylvania's Local Agency Law, 2 Pa. C.S. § 101, by refusing to

---

[4] The Complaint does not attach this agreement or include any details regarding the terms of this agreement as it relates to the grievance procedures.

5

allow him to appeal his termination in a hearing before the school board.

**II.  Discussion**

　A. Standard of Review

Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). "This requires a plaintiff to plead "sufficient factual matter to show that the claim is facially plausible," thus enabling "the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009)). While the complaint "does not need detailed factual allegations ... a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

As noted by the Court of Appeals for the Third Circuit in *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011), a 12(b)(6) inquiry includes identifying the elements of a claim, disregarding any allegations that are no more than conclusions and then reviewing the well-pleaded allegations of the complaint to evaluate whether the elements of the claim are sufficiently alleged. A court may consider the complaint, exhibits attached to the complaint, matters of public record and "undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citation omitted). Therefore, the Court can consider the Complaint and all the documents attached thereto: the notice of Loudermill hearing, the April 25, 2018 letter from the Union and the June

6

27, 2018 Official Statement of Charges.

If a claim "is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008) (citation omitted).

B. Procedural Due Process Claim

In Count I, Plaintiff asserts a claim under 42 U.S.C. § 1983 that his due process rights under the Fourteenth Amendment were violated on October 2, 2017, when he was suspended with pay for two days; on June 26, 2018, when he was suspended without pay; and on July 24, 2018, when he was terminated.[5]

The Fourteenth Amendment provides that states shall not "deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. "Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law...." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972).

Disciplinary issues related to professional employees of a school district area governed by the Pennsylvania School Code. Specifically, the Code provides that:

> Before any professional employee having attained a status of permanent tenure is dismissed by the board of school directors, such board of school directors shall furnish such professional employe with a detailed written statement of the charges upon which his or her proposed dismissal is based and shall conduct a hearing. A written notice signed by the president and attested by the secretary of the board of school directors shall be forwarded by registered mail to the professional employe setting forth the time and place when and where such professional employe will be given an opportunity to be heard either in person or by counsel, or both, before

---

[5] Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979).

7

> the board of school directors and setting forth a detailed statement of the charges. Such hearing shall not be sooner than ten (10) days nor later than fifteen (15) days after such written notice.

24 P.S. § 11-1127. The parties agree that under Pennsylvania law, Plaintiff had a property interest in his employment as a schoolteacher.

"Once it is determined that due process applies, the question remains what process is due." *Goss v. Lopez*, 419 U.S. 565, 577 (1975) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). The determination of what process is "due" is "not to be found in statutes ... [but] is a question of federal constitutional law." *McDaniels v. Flick*, 59 F.3d 446, 458 (3d Cir. 1995) (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985)). "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Matthews v. Eldridge*, 424 U.S. 319, 333 (1976) (citation omitted). "[T]he timing and content of a notice ... will depend on appropriate accommodation of the competing interests involved." *Gniotek v. City of Phila.*, 808 F.2d 241, 244 (3d Cir. 1986) (quoting *Goss*, 419 U.S. 579).

In *Loudermill*, the Supreme Court noted that an individual must be given the opportunity for a hearing before he is deprived a significant property interest, including prior to the discharge of an employee who has a protected property interest in his employment. 470 U.S. at 542. This includes notice and an opportunity to respond. *Id.* at 546. Nevertheless, "in those situations where the employer perceives a significant hazard in keeping the employee on the job, it can avoid the problem by suspending with pay." *Id.* at 544-45 (footnote omitted).

In cases in which teachers have been charged with inappropriate behavior involving students, courts have found that suspension with pay in the absence of a prior hearing did not violate procedural due process. See *Jerrytone v. Musto*, 167 F. App'x 295, 301 (3d Cir. Jan. 23,

8

2006); *Damiano v. Scranton Sch. Dist.*, 135 F. Supp. 3d 255, 271 (M.D. Pa. 2015) (distinguishing suspensions with pay from suspensions without pay).

In this case, after the District received complaints that he had been "ogling" female students' breasts during "hops-in-place" exercises. Given that this allegation related to inappropriate conduct with female students, suspension with pay did not violate his due process rights. Therefore, Plaintiff has not stated a claim for a procedural due process violation arising out of the two-day suspension with pay in October of 2017.

On the other hand, when Plaintiff was suspended without pay on June 26, 2018, he was entitled to pre-deprivation notice and an opportunity to be heard. *See Schmidt v. Creedon*, 639 F.3d 587, 597 (3d Cir. 2011) ("absent extraordinary circumstances, due process requires notice and a hearing prior to suspension without pay, even where union grievance procedures, after the fact, fully compensate erroneously suspended employees."). *See also Gniotek v. City of Philadelphia*, 808 F.2d 241 (3d. Cir. 1986); *Michael v. Quaker Valley Sch. Dist.*, 2017 WL 639374, at *10 (W.D. Pa. Feb. 16, 2017).[6] The pre-deprivation hearing need not be elaborate, but it is necessary, even if extensive post-deprivation remedies are afforded. *Loudermill*, 470 U.S. at 545.

The District contends that Plaintiff received adequate notice in the April 6, 2018 Loudermill letter. Specifically, the letter advised him that a female student claimed that he inappropriately touched and caressed her back in a sexual manner; that he initiated jokes/pranks

---

[6] In suggesting otherwise, the District relies upon *Jerrytone*, which concluded that a school district's failure to provide a hearing prior to placing a teacher on unpaid leave did not violate due process. 167 F. App'x at 301. However, *Jerrytone*, which is a non-precedential opinion, was decided before *Schmidt*. Moreover, in *Jerrytone,* the Court found that the failure to provide a hearing did not violate due process rights because of the serious nature of the allegations against the teacher. The District also cites *Kaplan v. School District of Philadelphia*, 130 A.2d 672 (Pa. 1957), a case that was decided well before *Loudermill*.

9

that extended to a prurient or sexual nature; that he ordered girls in his gym class to hop in place while covering their breasts in a sexual manner; that he made inappropriate remarks about "paddling" a student; and that he commented on a student's hair color in a fashion as to make students uncomfortable. The District's letter also noted that harassment charges had been filed against him and that a hearing was scheduled for April 13, 2018. The District also referenced the earlier March 14, 2018 meeting between Plaintiff and Principal Stephans at which Plaintiff was presented with written questions about "AS" and an "incident" in the cafeteria.[7] It also notes that the Statement of Charges that was provided to Plaintiff the day after his suspension had identical language.

Plaintiff argues that the notice was vague and insufficient and did not provide him with an explanation of the District's evidence, relying in part on *Jennings-Fowler v. City of Scranton*, 680 F. App'x 112 (3d Cir. Feb. 23, 2017), in which the court found insufficient "boilerplate" language in a notice which had accused the plaintiff of "theft, willful destruction, willful defacement or willful misuse of City Property" and "intentionally falsifying or altering any City record or report." *Id.* at 116. *But see Dohanic. v. Commonwealth of Pa. Dep't of Ed.*, 533 A.2d 812, 815-16 (Pa. Commw. 1987) (finding sufficient a notice informing a teacher that he had "authored numerous personal notes to a twelve-year old female child, which undermines parental and school administrative authority, and disturbs the moral and social orientation of the child."). Plaintiff contends that the April 2018 notice did not advise him, for example, of the identity of his accusers or the dates on which these events were alleged to have occurred.

Plaintiff further alleges that the District canceled the original Loudermill hearing because

---

[7] Plaintiff contends that he did not know who "AS" was or anything about the alleged "incident."

10

criminal charges that were pending against him.[8] However, after he was found not guilty, no updated Loudermill notice was provided and he was not given an opportunity to be heard before being suspended without pay on June 26, 2018. Therefore, he asserts, he was deprived of his procedural due process rights.

As the Supreme Court held in *Loudermill,* a tenured employee is entitled to "notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story. 470 U.S. at 546. Therefore, the Court agrees that in viewing the allegations of the Complaint in the light most favorable to Plaintiff, the allegations regarding lack of notice and an opportunity to be heard with respect to his June 26, 2018 suspension without pay state a claim for a violation of procedural due process

Plaintiff also alleges in his Complaint that his termination without a hearing violates his due process rights. As this Court recently noted:

> Violation of the requirement to provide an adequate pre-deprivation hearing is a claim separate from that based on a denial of required post-deprivation process. Ordinarily, with no constitutionally adequate pre-deprivation hearing, "a complete constitutional violation has (allegedly) already occurred; if the Constitution requires pre-termination procedures, the most thorough and fair post-termination hearing cannot undo the failure to provide such procedures."

*Michael v. Quaker Valley Sch. Dist.*, 2017 WL 639374, at *11 (W.D. Pa. Feb. 16, 2017) (quoting *Alvin v. Suzuki*, 227 F.3d 107, 120 (3d Cir. 2000)). *See Baker v. Moon Area Sch. Dist.*, 2018 WL 405179, at *2-4 (W.D. Pa. Aug. 27, 2018) (Superintendent dismissed without a hearing stated a procedural due process claim for lack of pre-deprivation process). At the same time, there is no requirement for an elaborate pre-deprivation hearing. *Loudermill,* 470 U.S. at 545; *Schmidt,* 639 F.3d at 596-97.

---

[8] The District states that Plaintiff's union representative asked to have the hearing postponed (ECF No. 13 at 3, 11), but since the Court's review is limited to the allegations of the Complaint, this assertion cannot be accepted as true at this stage of the proceedings.

11

The District's Statement of Charges advised Plaintiff that a hearing was scheduled for July 10, 2018. Almost immediately thereafter, however, the District was advised by Plaintiff's union representative that he intended to pursue his "pending termination" through arbitration as part of the grievance process outlined in the collective bargaining agreement. Based upon this communication, the hearing was cancelled and Plaintiff was subsequently terminated on July 24, 2018. Thus, while Plaintiff was given an opportunity to participate in a school board hearing, he opted, at least initially, to pursue the alternative remedy available to him under the collective bargaining agreement.

The District argues that the availability of the grievance process after his termination relates to a post-deprivation process, not a pre-deprivation hearing. Therefore, it contends, Plaintiff's due process claim relating to his termination is premature because he has not completed the administrative process.

As noted by the Court of Appeals in *Dykes v. Se. Pennsylvania Transp. Auth.*, 68 F.3d 1564, 1565 (3d Cir. 1995), where an adequate grievance process is in place and is followed, a party has received the due process to which he is entitled. The Complaint does not set forth the procedure for grievances and arbitration in the collective bargaining agreement between the union and the District and the parties do not discuss this issue in their briefs. The Court notes, however, that the Public School Code provides that if a collective bargaining agreement exists between a school district and a union, a professional employee may choose to grieve and arbitrate his termination **or** request a hearing before the school board, but may not use both procedures. 24 P.S. § 11-1133 (footnotes omitted). The Pennsylvania Commonwealth Court has explained that "Section 1133 of the Code provides that a professional employee has the right to either a grievance proceeding subsequent to her dismissal *or* a hearing before a school board

12

prior to her dismissal..." *Scotchlas v. Board of Sch. Directors of Haverford Twp. Sch. Dist.*, 496 A.2d 916, 917 (Pa. Commw. 1985). Plaintiff elected a grievance proceeding on June 28, 2018 and was terminated on July 24, 2018.

Absent any factual allegations in the Complaint that the terms of the collective bargaining agreement allow for a grievance and/or arbitration process *before* termination, it would appear that Plaintiff elected to pursue a post-termination process.[9] As such, the Court cannot conclude under the facts presented here that given Plaintiff's election to pursue the grievance/arbitration process, his subsequent termination represents a pre-deprivation due process claim. Thus, Plaintiff's claim that his termination represents a pre-deprivation due process violation fails to state a claim. It is dismissed without prejudice to amend. However, if Plaintiff chooses to do so, he must allege facts that support a claim that his termination was a denial of his pre-deprivation due process rights given his election to proceed with the grievance process under the collective bargaining agreement.

Count II: Local Agency Law

In Count II, Plaintiff alleges that the District has refused to allow him to appeal his suspension without pay and dismissal through a local school board hearing, rather than private arbitration, and that this refusal constitutes an appealable adjudication under Pennsylvania Local Agency Law. He requests that the Court order the District to comply with its statutory duty to conduct a school board hearing even though any such hearing would be post-termination. Plaintiff asserts that the election of remedies doctrine does not foreclose his claim because, as he has pleaded, his election was not done knowingly and he has not received the remedy he now

---

[9] Notably, Plaintiff states in his Brief in Opposition that he is not asserting a violation of his post-deprivation due process rights. (ECF No. 16 at 15.) Moreover, he indicates that he "initially chose to pursue post-termination grievance arbitration." (*Id.* at 4.)

seeks, that is, a school board hearing.

The District has moved to dismiss this claim based upon lack of jurisdiction because Plaintiff failed to exhaust his administrative remedies. It also argues that once Plaintiff selected his remedy, he cannot pursue a different avenue of recovery. *See Neshaminy Sch. Dist. v. Neshaminy Fed. of Teachers*, 84 A.3d 391, 400 (Pa. Commw. 2014). However, as noted in *Neshaminy*, for the election of remedies doctrine to apply, a litigant must make a deliberate and knowing choice of his rights. *Id.* at 400.

The Public School Code provides that if a collective bargaining agreement exists between a school district and a union, a professional employee may choose to grieve and arbitrate his termination **or** request a hearing before the school board, but may not use both procedures. 24 P.S. § 11-1133 (footnotes omitted). Plaintiff advised the District that he elected to pursue a grievance proceeding on June 28, 2018 and he was terminated on July 24, 2018. Thus, when he subsequently changed his mind and requested a post-termination school board hearing, he was seeking to employ a procedure that is not addressed under the School Code.

Plaintiff alleges in Count II that the school board's refusal to hold a hearing is an adjudication under the Local Agency Law, 2 Pa. C.S.A. § 752, because it leaves him with no other forum in which to assert his rights. Contrary to Plaintiff's assertion, however, he does have another forum to assert his rights by utilizing the process provided in the collective bargaining agreement, albeit one that he has chosen to reject.

Moreover, Plaintiff has not pleaded facts that support his contention that there was, in fact, an adjudication by the school board under the Local Agency Law. The Complaint alleges only that Plaintiff's counsel contacted the District's solicitor to discuss this issue and that the solicitor subsequently denied his request for a hearing. (Compl. ¶ 111.) Plaintiff does not allege

any facts to the effect that he or his counsel requested a formal decision by the school board or that the board made a "decision," much less a written decision which would trigger any appeal rights.

While the Court acknowledges Plaintiff's allegations that his initial decision to pursue arbitration rather than a school board hearing was made without full knowledge of the consequences, he fails to cite any authority that supports his claim that the District has a statutory duty to conduct a post-termination hearing once a pre-termination hearing has been waived, even if that waiver was made without the requisite knowledge.

For these reasons, Court II of the Complaint is dismissed with prejudice.

In conclusion, the District's Motion to Dismiss will be granted in part and denied in part with respect to Count I of the Complaint and granted with respect to Count II.

An appropriate order follows.

BY THE COURT:

PATRICIA L. DODGE
United States Magistrate Judge